UNITED STATES, Appellant

v

WILLIE B. MITCHELL, Private, U. S. Army, Appellee

21 USCMA 340, 45 CMR 114

No. 24,800

April 21, 1972*

---

* Also decided and answered affirmatively this date on the same certified question is United States v Cassens, No. 24,978.

*Captain R. Craig Lawrence* argued the cause for Appellant, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway,* and *Captain David E. Wilson.*

*Captain Joseph V. Aprile, II,* and *Captain Peter J. Horner, Jr.,* argued the cause for Appellee, Accused. On the brief were *Colonel George J. McCartin, Jr., Lieutenant Colonel Joseph E. Donahue, Captain Richard A. Cooper,* and *Captain Barry K. Duwe.*

## Opinion of the Court

DUNCAN, Judge:

By certificate in the case before us, the acting Judge Advocate General asked the following question:

"WAS THE COURT OF MILITARY REVIEW CORRECT IN HOLDING THAT AN OFFICER HAS NO AUTHORITY TO AUTHORIZE AN OFF-POST SEARCH IN OKINAWA?"

The appellant was convicted of wrongful possession of LSD and marihuana, and a violation of a regulation by maintaining a private residence off-post in Okinawa (Articles 92 and 134, Uniform Code of Military Justice, 10 USC §§ 892 and 934). He was sentenced to a dishonorable discharge, total forfeitures, confinement at hard labor for 18 months, and reduction to the lowest enlisted grade. The Court of Military Review set aside and dismissed the LSD and marihuana offenses on the basis of an illegal search and seizure, and affirmed only so much of the sentence as provided for confinement at hard labor for five months, forfeiture of $50.00 per month for five months, and reduction to the grade of Private E–1.

At trial the defense unsuccessfully moved to suppress the LSD and marihuana, the product of a search authorized by the appellant's commanding officer of premises occupied by the appellant off post in Okinawa. In support of the motion, defense counsel maintained that a warrant to search off-post premises in Okinawa could be issued *only* by a United States Civil Administration Court, Ryukyu Island (USCAR). A majority of the Court of Military Review agreed with this position and reversed and dismissed as noted above.

The Government contends that since paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition), authorizes searches by commanding officers in foreign countries, the Court of Military Review overlooked the question of concurrent jurisdiction (United States v DeLeo, 5 USCMA 148, 17 CMR 148 (1954); United States v Carter, 16 USCMA 277, 36 CMR 433 (1966); cf. United States v Vierra, 14 USCMA 48, 33 CMR 260 (1963)), and *incorrectly* held that the commanding officer had no authority to authorize an off-post search in Okinawa.

Appellate defense counsel, in arguing that the court was correct, aver that:

(1) The availability of a legally tested warrant system applicable to the situation removed the need for, and ended the permissibility of, authorization by the commander to search off-post (United States v Vierra, supra);

(2) The Civil Administration Ordinance No. 144, titled "Code of Penal Law and Procedure," March 16, 1955, section 1.4.2, which placed exclusive jurisdiction to search off-post dwellings in judges of the Civil Administration or Magistrate Court, because it is pursuant to international agreement must be adhered to by visiting or occupying military authorities (AR 190–22, October 18, 1960); and

(3) Since paragraph 152, Manual, supra, merely states a rule of general and not universal application, the specific mandate of the local Ordinance supersedes the Manual.

The Ordinance, which was the basis for the Court of Military Review's find-

ing that the search was illegal, provides:

> "1.4.2 *Search of Premises.* When against the will of the lawful occupant, Military Police, Air Police, Shore Patrol, or other military law enforcing agencies, desire to enter a private dwelling off a military reservation, they will first procure a search warrant through a judge of a Civil Administration or Magistrate Court. Army, Navy, and Air Force law enforcement agencies are authorized to make uninvited entry into a private abode without a warrant when reasonably necessary in order to apprehend a person who has committed a felony and is being pursued, or to prevent the commission of a felony."

In United States v Vierra, supra, this Court considered at length the background and history of the establishment of the Ryukyu Civil Administration Court by Executive Order. A careful reading of that opinion is recommended. Being satisfied that the court was validly established, we held that a search warrant issued by that court in accordance with its rules authorizing a search of Vierra's off-base residence on Okinawa was valid. The Ordinance then under consideration is the same as the Ordinance before us in this case.

In *Vierra,* we rejected a defense contention that the warrant of the USCAR itself was not sufficient for the search, but must, *in addition,* be supported by the express authorization of proper military authority. Cf. United Sates v DeLeo, supra.

Having so held, may the authorization of a commanding officer *replace* the required warrant of the USCAR court? We think not.

With certain exceptions, not applicable in this case, a military person's off-post dwelling, located ▇▇▇▇▇▇▇ ■ in the United States, "may not lawfully be searched without a warrant" which meets the requirements of the Fourth Amendment to the Constitution. United States v DeLeo, supra, at page 157. See also United States v Garlich, 15 USCMA 362, 35 CMR 334 (1965); paragraph 3c, AR 190–22, October 18, 1960.[1] Cf. United States v Ross, 13 USCMA 432, 32 CMR 432 (1963); United States v Conlon, 14 USCMA 84, 33 CMR 296 (1963); United States v Burnside, 15 USCMA 326, 35 CMR 298 (1965). As a general rule, this requirement does not apply outside the United States, its territories, and possessions "for no American court is available and empowered to issue warrants overseas." United States v DeLeo, supra, at page 157. The Manual, in recognition of this fact, provides in paragraph 152 that a commanding officer may, upon probable cause, authorize "[a] search of property . . . occupied by . . . a person subject to military law . . . situated in occupied territory or a foreign country." United States v DeLeo and United States v Carter, both supra. See also United States v Higgins, 6 USCMA 308, 20 CMR 24 (1955). But this is a rule "based simply and solely upon necessity" (United States v Byrne, No. 69–2797 (NCMR February 20, 1970))[2] and is not without limitation. The question of whether and under what condition a military ▇▇▇▇▇▇ ■ itary commander can lawfully authorize an off-post search of a private dwelling in a foreign country is dependent upon international agreement or arrangement between the involved countries, where such exists. This is the expressed teaching of United States v Carter, supra.

---

[1] AR 190–22, October 18, 1960, states:

> "*c.* In the United States, its Territories, and possession searches off military installations in areas or buildings *not* under military control must be conducted by civil officials of the jurisdiction under the authority of a search warrant."

[2] In United States v Byrne, No. 69–2797 (NCMR February 20, 1970), a Navy Court of Military Review held that a military commander's authorization to search a Marine Private's off-post residence in Okinawa was illegal, for the same reason as utilized by the Army Court of Military Review in this case.

Recognition of this principle by military authorities is apparent. AR 190–22, June 12, 1970, provides:[3]

"**2–1. Commander's authorization to search.** *a.* All property which is owned or controlled by the United States and is under the control of an armed force, or property which is located within a military installation, foreign country, or occupied territory, and is owned, used, or occupied by persons subject to military law (or the law of war) is subject to the authority of a military commander. The commanding officer having jurisdiction over the place where the property is situated or, if the property is in a foreign country or in occupied territory, over personnel subject to military law (or the law of war) who have control or possession of the property may authorize a search of such property. . . . When the person or property is located in a foreign country, the commander will authorize a search *only when such action is authorized by an international agreement or arrangement with the authorities of the foreign country.*" [Emphasis supplied.]

There exists a Status of Forces Agreement between this Country and Japan. See United States v Cadenhead, 14 USCMA 271, 34 CMR 51 (1963). However, since Okinawa, while a possession of Japan, was, at the time of this offense, governed under an Executive Order of the President of the United States (United States v Vierra, supra), the Agréement· with that country is not pertinent to the matter at hand. Rather, the controlling arrangement is that which ▬▬▬ ■ flowed from the Executive Order, issued pursuant to the Treaty of Peace with Japan—in this case the Code of Penal Law and Procedure promulgated by USCAR. The clear and unambiguous provisions of that Penal ·Code placed exclusive jurisdiction to authorize off-post searches of Okinawan private dwellings in the courts of Civil Administration. Warrants for such searches must be issued by a judge of the Okinawan Civil Administration or Magistrate Court. "Since the reason for the general rule [paragraph 152, Manual, supra] did not exist in Okinawa, the rule itself did not exist on that Island." United States v Byrne, supra, at page 7.

The certified question is answered in the affirmative.

Chief Judge DARDEN and Judge QUINN concur.

---

[3] This revision of AR 190–22 is dated just 67 days after the search was conducted in this case, but prior to trial. Prior to the date of this revision, AR 190–22, October 18, 1960, simply stated:

". . . These regulations are applicable in the United States, its possessions, Puerto Rico, and occupied territory; they apply in other areas only to the extent that they are authorized by applicable treaty provisions and are consistent with applicable provisions of local law."