UNITED STATES, Appellee,

v.

Michael E. YAGER, Private, U. S. Army, Appellant.

No. 31,909.
SPCM 10629.

U. S. Court of Military Appeals.

July 23, 1979.

For Appellant: *Captain Ronald M. Riggs (argued); Captain John M. Nolan, Captain Sammy S. Knight* (on brief); *Lieutenant Colonel John R. Thornock.*

For Appellee: *Captain Dale L. Anderson* (argued); *Major John T. Sherwood, Jr., Captain Richard S. Kleager* (on brief); *Colonel Thomas H. Davis, Lieutenant Colonel Donald W. Hansen, Major Steven M. Werner.*

Opinion

COOK, Judge:

This appeal involves the validity of a random jury selection program [1] established by the convening authority, 1st Infantry Division and Fort Riley, Fort Riley, Kansas. In accordance with procedures promulgated by a local directive [FR Circular No. 27–10–1 (Oct. 1, 1973)],[2] names for a list of prospective jurors were selected from personnel data files and placed on a "Master Juror List" and thereafter screened by having each individual whose name appeared on the list complete a questionnaire regarding qualifications to serve as a court-martial member. Upon completion of the screening process and the elimination of unqualified and exempt personnel, the remaining persons were considered "Qualified Jurors," and they were eligible for selection, at random, for court-martial duty. In cases involving enlisted accused who wished to have enlisted court members, the directive provided that each panel of jurors would be comprised of at least one-third enlisted personnel.

Numerous criteria were established for determining the eligibility of court-martial members. While commending the fundamental concept of the random selection

---

1. The program in question was not completely "random" as the selection of court-martial members was subject to the approval of the convening authority. This exception was necessary to ensure compliance with Article 25(d)(2), Uniform Code of Military Justice, 10 U.S.C. § 825(d)(2), which requires the convening authority to detail members who, in his opinion, are best qualified to serve.

2. The directive was amended several times before trial and re-issued on March 7, 1974. Except as otherwise noted, the procedures discussed in this opinion were the same under both directives.

program, the appellant submits that the program, as it was applied to him, is fatally flawed by the application of two of these criteria—the exclusion of individuals solely on the basis of rank, and the exclusion of individuals on the basis of alienage. According to the directive, a court member had to be serving in the military as a Private First Class (E–3) or higher.[3] Because the appellant was, at the time, serving as a Private (E–1) and had requested trial before enlisted members, he now submits that the rank requirement is contrary to the provisions of Article 25(c), Uniform Code of Military Justice, 10 U.S.C. § 825(c). Further, as his request for enlisted court members also included a request that the rank requirement be waived, he maintains that the challenge to the rank requirement was sufficiently and timely raised at the trial level.

In *United States v. Daigle,* 1 M.J. 139 (C.M.A.1975), the Court held that the systematic exclusion of lieutenants and warrant officers from membership on general courts-martial was inconsistent with Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2). The Court concluded that:

> When rank is used as a device for deliberate and systematic exclusion of qualified persons, it becomes an irrelevant and impermissible basis for selection.

*United States v. Daigle, supra* at 141; *see also United States v. Greene,* 20 U.S.C.M.A. 232, 43 C.M.R. 72 (1970). Appellant submits that the exclusion of the persons serving in enlisted grades below E–3 is subject to the same arbitrariness encountered in *Daigle.*

In *Daigle,* the Court was confronted with a situation where a group of otherwise qualified individuals was excluded from membership on a court-martial solely on the basis of rank. There was no demonstrable relationship between the excluded ranks

and Article 25(d)(2), which requires a convening authority to detail those "best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Article 25(c)(1), UCMJ, 10 U.S.C. § 825(c)(1), sets forth the qualifications for enlisted members and rank is not a disqualification, although Article 25(d)(1) states that no serviceman, when avoidable, should be tried before a member junior in rank or grade.[4] In its opinion [*United States v. Yager,* 2 M.J. 484, 486–87 (A.C.M.R.1975)], the Court of Military Review below observed that, under circumstances then extant in the Army:

> [T]he disqualification of privates is an embodiment of the application of the statutory criteria—age, education, training, experience, length of service, and judicial temperament. Persons in the grade of private are normally in one of the following categories: they have only a few months service; or although having sufficient service they have failed promotion because they have shown no ability, aptitude, or intelligence; or they have been reduced in grade for misconduct or inefficiency. Privates are in the initial training cycle of their military service, preparing themselves to become useful, productive soldiers. They are in a strange environment, many away from home for the first time, and subject to the pressures inherent in a stressful, strict disciplinary situation.

The conclusion of the Court of Military Review was clearly supported by the existing promotion standards. At the time of trial, advancement to E–2 was automatic after 4 months of service, unless affirmative action was taken by the commander to prevent such advancement. Earlier advancement was also permitted. After serving in the grade of E–2 for 4 months, an individual was eligible for promotion to

---

3. The rank requirement was added to the program by an amendment to FR Circular No. 27–10–1 (Oct. 1, 1973), which was effective during the time in question.

4. Appellant was a Private (E–1) and, thus, E–2s and E–1s with a date of rank preceding the appellant's date of rank would have been excluded from the restriction of Article 25(d)(1), UCMJ, 10 U.S.C. § 825(d)(1).

E–3, but the 4-month requirement could be waived. AR 600–200 (Feb. 10, 1972). Furthermore, many E–1s would be excluded by the requirement of Article 25(d)(1). Accordingly, I agree with the Court that there was a demonstrable reason for the exclusion of these grades reasonably related to the criteria for qualification under Article 25(d)(2), because the application of these criteria would exclude most, if not all, of the grades involved. However, the exclusion of specific ranks is suspect and, absent the application of Article 25(d)(1), there must be a demonstrable relationship between the excluded ranks and the criteria of Article 25(d)(2). Indeed, if a circumstance should arise where servicemen are serving in the grades of E–1 and E–2 as a result of more rigorous requirements for promotion, the requisite relationship could be wanting.

█ The appellant also submits the requirement that court-martial members be citizens of the United States is inconsistent with Article 25, 10 U.S.C.A. § 825; however, this error was not raised at the trial level. Furthermore, the appellant is a citizen of the United States and, under these circumstances, I conclude that the error, if any,[5] cannot be urged on appeal as a ground for reversal.

The decision of the United States Army Court of Military Review is affirmed.

Judge PERRY concurs in the result.

Chief Judge FLETCHER did not participate.

---

5. *See Perkins v. Smith,* 370 F.Supp. 134 (D.C. Md.1974), *aff'd,* 426 U.S. 913, 96 S.Ct. 2616, 49 L.Ed.2d 368 (1976), which upheld the exclusion of aliens from grand and petit juries. However, Article 25 does not specifically disqualify aliens as court-martial members. At this time, the question of whether the presence of aliens in our armed services renders such a criterion improper as having no relationship to a national interest is not before us. *See Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976).