**UNITED STATES, Appellee,**

v.

**Jason S. ROLAND, Airman, U.S. Air Force, Appellant.**

No. 98–0015.
Crim.App. No. 32485.

U.S. Court of Appeals for the Armed Forces.

Argued Oct. 5, 1998.

Decided March 17, 1999.

Sullivan, J., filed opinion concurring in the result.

Gierke, J., filed dissenting opinion.

CRAWFORD, J., delivered the opinion of the Court, in which COX, C.J., and EVERETT, S.J., joined. SULLIVAN, J., filed an opinion concurring in the result. GIERKE, J., filed a dissenting opinion.

For Appellant: *Captain Karen L. Hecker* (argued); *Colonel Douglas H. Kohrt, Captain Margarete Ashmore,* and *Captain Harold M. Vaught* (on brief).

For Appellee: *Major Ronald A. Rodgers* (argued); *Lieutenant Colonel Michael J. Breslin* and *Major Allen G. Erickson* (on brief); *Colonel Brenda J. Hollis* and *Lieutenant Colonel Anthony P. Dattilo.*

Judge CRAWFORD delivered the opinion of the Court.

Pursuant to his pleas, appellant, an E–2, was convicted and sentenced by officer and enlisted members of use and distribution of methamphetamines, and introduction of methamphetamines onto McChord Air Force Base, Washington, in violation of Article 112(a), Uniform Code of Military Justice, 10 USC § 912(a). The convening authority approved the sentence of a bad-conduct discharge, 9 months' confinement, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

We granted review of the following issue:
WHETHER THE MILITARY JUDGE ERRED IN FAILING TO FIND THAT THE JURY HAD BEEN IMPROPERLY SELECTED.

We hold that the military judge did not err in failing to find that the court members were improperly selected.*

## FACTS

At appellant's trial, his defense counsel moved to dismiss the charges or stay the proceedings until a new panel could be selected in accordance with RCM 912(b)(1), Manual for Courts–Martial, United States (1998 ed.). He principally contended that enlisted members below the grade of E–5 were unlawfully excluded from consideration as panel members in appellant's case.

Lieutenant Colonel (LtCol) Tuley, the staff judge advocate (SJA), testified that she routinely sent a quarterly letter to the commanders of six groups and large squadrons at McChord, asking them for court member nominations. Her letter sought qualified personnel from every grade from E–5 through O–6. Two group executive officers interpreted the SJA's letter to preclude the nomination of anyone below the rank of E–5.

Colonel (Col) Duncan McNabb testified by stipulation that he was the special court-martial convening authority at McChord at the time of appellant's trial. As such, one of his duties was to forward a list of potential court members to the general court-martial convening authority (GCMCA), a list compiled by reference to the quarterly nominations made by the group and squadron commanders. Col McNabb testified that he was aware of the criteria set forth in Article 25, UCMJ, 10 USC § 825; understood that he was not limited to those nominated by other commanders; and knew that he could select any members he found to be qualified. He also testified that he did not know that the pool of nominees was limited to E–5 and above, and that if E–4 and below were submitted to him as potential court members, he would consider them and select those that met the requisite criteria.

From the list of nominees submitted by Col McNabb, the GCMCA selected four enlisted members, but only three of the four were members Col McNabb recommended. The memorandum transmitting the list to the GCMCA indicated that he was not limited to the proposed enlisted members, but could select any enlisted members from his com-

---

* We also granted review of the following issue:
WHETHER THE APPLICATION OF ARTICLES 57(a) AND 58b, UCMJ, VIOLATES THE *EX POST FACTO* CLAUSE OF THE UNITED STATES CONSTITUTION WITH RESPECT TO APPELLANT.
This issue has already been disposed of in *United States v. Gorski,* 47 MJ 370, 375 (1997).

mand, provided they met the Article 25 criteria.

No evidence was introduced as to bad faith by either the SJA or the GCMCA; nor was statistical evidence introduced from which one may draw an inference of improper intent concerning the selection of court members.

The military judge noted the presumption that the GCMCA was aware of his duty under Article 25, as well as his unlimited discretion in selecting court members of any rank; and the judge found no evidence to the contrary. He ruled that the court members were selected "within the legally allowable system under Article 25." Notwithstanding this ruling, the military judge remonstrated, "[T]his is not a great system and I highly recommend if it has not been changed that it be changed because we spend time dealing with it."

## DISCUSSION

 The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." However, the military defendant does not have a right to a jury selected from the civilian community. *See Solorio v. United States*, 483 U.S. 435, 453, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987)(Marshall, J., dissenting)(Court's decision rejects right to indictment by grand jury and trial by jury of one's peers, even for non-service-connected offenses); *Ex parte Quirin*, 317 U.S. 1, 39–43, 63 S.Ct. 1, 87 L.Ed. 3 (1942)(dictum); *Kahn v. Anderson*, 255 U.S. 1, 8–9, 41 S.Ct. 224, 65 L.Ed. 469 (1921); *Ex parte Milligan*, 4 Wall. 2, 71 U.S. 2, 107, 123, 18 L.Ed. 281 (1866); *United States v. McClain*, 22 MJ 124, 128 (CMA 1986); *United States v. Jenkins*, 20 USCMA 112, 114, 42 CMR 304, 306 (1970). But, the military defendant does have a right to members who are fair and impartial. *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Chandler v. Florida*, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981).

Congress, pursuant to its authority under Article I, Section 8, Clause 14 of the Constitution, has given the convening authority the responsibility to select court members to sit on courts-martial. *See* Art. 25(d)(2). In addition, the Supreme Court has accorded judicial "deference to the determination of Congress, made under its authority to regulate the land and naval forces." *Weiss v. United States*, 510 U.S. 163, 177, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994), quoting *Middendorf v. Henry*, 425 U.S. 25, 43, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976).

The convening authority is required to detail the court members. RCM 503–505. To ensure fairness and impartiality, "[n]o person subject to the [UCMJ] may attempt to coerce or, by any unauthorized means, influence the action of a court-martial ... in reaching the findings or sentence in any case." Art. 37(a), UCMJ, 10 USC § 837(a). Additionally, the conduct of members may not be the subject of a report card or a fitness report. Art. 37(b). This Court has been diligent in preventing the improper influence of court members, witnesses, or other parties to the trial.

 While the military defendant is not entitled to a panel composed of a cross-section of the military community, *United States v. Lewis*, 46 MJ 338, 341 (1997), the members may not be selected solely on the basis of their rank. *United States v. Nixon*, 33 MJ 433 (CMA 1991) (unanimous court found that, while lack of enlisted personnel below E–8 created appearance of impropriety, evidence showed compliance with Article 25). Thus, while it is permissible to appoint senior, qualified court members, *United States v. White*, 48 MJ 251 (1998), the lower grades may not be systematically excluded. *United States v. McClain*, 22 MJ 124 (CMA 1986) (Court found improper motive for systematic exclusion of enlisted members below E–7); *United States v. Yager*, 7 MJ 171, 173 (CMA 1979) (Court held that panel selection process excluding enlisted members below E–3 was not invalid because "there was a demonstrable reason for the exclusion of these grades reasonably related to ... Article 25(d)(2)"); *United States v. Daigle*, 1 MJ 139 (CMA 1975) (selection process involving nomination by subordinate commanders based solely on requested ranks and without reference to Article 25 criteria was found

improper); *United States v. Greene*, 20 USC-MA 232, 43 CMR 72 (1970); *United States v. Crawford*, 15 USCMA 31, 40, 35 CMR 3, 12 (1964). Nor may a court-martial be "packed" to achieve a desired result. *United States v. White, supra; United States v. Hilow*, 32 MJ 439, 440 (CMA 1991); *United States v. Smith*, 27 MJ 242 (CMA 1988).

■■■ To enforce the right to fair and impartial members, this Court has required broad discovery and compulsory process on motions challenging the selection of members. The military defendant also has the option of having the findings and sentence determined by a military judge alone or by a court composed of members selected by the convening authority. Furthermore, any commissioned officer or warrant officer may serve as a court member, and when there has been a request in writing by an enlisted defendant, enlisted personnel are eligible to serve on general or special courts-martial. Also, a safeguard against any improper conduct in the selection process is mandatory appellate review in many cases before the Court of Criminal Appeals and a few cases before this Court. And finally, there is direct appeal under certain conditions to the Supreme Court.

It was not until the Elston Act in 1948 that an enlisted defendant had a right to have at least one-third of the members be enlisted personnel. 62 Stat. 604, 628 (1948). An earlier proposal to appoint enlisted members was not enacted. S. 64, 66th Cong., 1st Sess. (1919).

Article 25(d)(2) states that the members should be selected on a "best qualified" basis, examining "age, education, training, experience, length of service, and judicial temperament." Article 25(d)(1) provides that a defendant normally should not be tried by a member who is his or her junior in rank. Article 25 does not set forth grade or status as a criteria for selection. And although this means that young soldiers in the lower enlisted ranks are eligible for selection, in many instances an E–2, for example, may be in his or her late 20's and have a college degree and extensive training and experience in the civilian sector.

■■■ The selection process normally starts with the SJA seeking nominations from subordinate jurisdictions. Presenting nominations to a convening authority is a reasonable means of assisting the convening authority, provided it does not improperly exclude eligible servicemembers. *See United States v. Kemp*, 22 USCMA 152, 46 CMR 152 (1973). This nomination process may not systematically exclude or include a certain category of servicemembers. When the request for nominations does improperly include or exclude certain members, this Court will ensure that those actions do not taint the selection by the convening authority. "[W]e have never held that the impact of [such] improper assistance can be ignored solely on the basis of the convening authority's official duty to personally select the members in accordance" with the UCMJ. *Hilow*, 32 MJ at 442. A court-martial must be properly convened: "[B]lanket exclusion of qualified officers or enlisted members in the lower grades is at odds with congressional intent and cannot be sustained." *Nixon*, 33 MJ at 434.

■■■ Once the defense comes forward and shows an improper selection, the burden is upon the Government to demonstrate that no impropriety occurred. While there was no selection of anybody below the grade of E–5 here, the defense has not carried its burden to show that there was unlawful command influence. The record establishes how the members were selected, and there is no indication of impropriety. LtCol Turley testified that E–4's and below were not categorically excluded. Other groupings simply had been identified. Additionally, Col McNabb testified that he knew he was not limited to the selection of those recommended, but could select any member of the command he felt qualified.

The decision of the United States Air Force Court of Criminal Appeals is affirmed. Collection of any forfeitures, and execution of the reduction in grade prior to the date of the convening authority's action, are hereby declared to be illegal. Any forfeitures already collected from appellant, and any pay

and allowances withheld because of the illegal reduction in grade, will be restored. The record of trial is returned to the Judge Advocate General of the Air Force for appropriate action.

**SULLIVAN, Judge (concurring in the result):**

The staff judge advocate (SJA)'s letter sought court nominations from every grade from E–5 to 0–6 to be included in the recommended jury pool. The implicit exclusion of certain ranks (E–4 and below) in appellant's case troubles me. However, the SJA's letter, on its face, was designated as mere guidance, and the convening authority was informed of his opportunity to select anyone from his command. Moreover, the military judge found that no bad intent to influence the court-martial and no deliberate stacking of the pool existed, as in *United States v. Hilow*, 32 MJ 439 (CMA 1991). I would hold there was no violation of Articles 25 and 37, Uniform Code of Military Justice, 10 USC §§ 825 and 837, in these circumstances. Perhaps, if a random jury selection system now being studied by the Department of Defense is adopted, challenges like the one in this case will occur less. *See United States v. Upshaw*, 49 MJ 111, 114 (1998)(Sullivan, J., concurring).

**GIERKE, Judge (dissenting):**

I disagree with the majority's conclusion that enlisted persons in pay grade E–4 and below were not systematically excluded. 50 MJ at 69–70. In my view, the Government has not carried its burden to show that appellant's court-martial was properly selected.

In *United States v. McClain*, 22 MJ 124 (CMA 1986), this Court held that the court-martial was improperly selected because enlisted persons below pay grade E–7 were systematically excluded. In *United States v. Daigle*, 1 MJ 139 (CMA 1975), this Court held that the court-martial was improperly selected because lieutenants and warrant officers were systematically excluded. In *United States v. Greene*, 20 USCMA 232, 43 CMR 72 (1970), this Court held that the court-martial was improperly selected where

membership was limited to colonels and lieutenant colonels.

In none of these cases did this Court place the burden on the defense to show unlawful command influence. To the contrary, this Court placed the burden on the Government to show that the court-martial was properly selected. *See Greene*, 20 USCMA at 238, 43 CMR at 78 ("[W]e are not convinced that an improper standard was not used for the selection of the members of this court."). All that was required of the defense was a showing that qualified, potential members appeared to be systematically excluded. The only systematic exclusion permitted by this Court thus far is the exclusion of enlisted persons in pay grades E–1 and E–2. *See United States v. Yager*, 7 MJ 171 (CMA 1979) (E–1 and E–2 are presumptively unqualified under Article 25(d)).

In my view, our holdings in the above-cited cases compel the conclusion that categorically excluding all persons below the pay grade of E–5 is improper. Persons in pay grade E–4 are sergeants in the Air Force, with the full legal authority of noncommissioned officers. *See* Arts. 91 and 92, Uniform Code of Military Justice, 10 USC §§ 891 and 892, respectively. As such, I do not believe that they can be considered presumptively unqualified.

Furthermore, I do not believe that the exclusion of enlisted members in pay grades E–4 and below can be characterized as an administrative mistake as it was in *United States v. Upshaw*, 49 MJ 111 (1998). In *Upshaw*, the exclusion of qualified members was inadvertent; in this case, it was intentional.

The staff judge advocate, Lieutenant Colonel Tuley, was acting with the mantle of command authority when she tasked subordinate commands to nominate enlisted members in grades E–5 through E–9. *See United States v. Hilow*, 32 MJ 439, 441 (CMA 1991) (actions of staff judge advocate and deputy adjutant general attributed to commander). Her testimony that she would consider nominees in pay grades E–4 and below does not pass the reality test. Subordinates respond to taskings literally; they do not

nominate persons in pay grade E–4 and below when the tasking specifies pay grade E–5 and above.

Finally, I believe that systematic exclusion of qualified persons is a structural error that cannot be tested for prejudice. Except for leaving guilty pleas undisturbed, because findings in such cases are by the military judge even though the trial is by members, we have not attempted to assess the impact of systematic exclusion on findings or sentence. *See United States v. Daigle* and *United States v. Greene,* both *supra.*

In my view, appellant is entitled to relief because of the improper exclusion of qualified nominees. I would reverse the decision of the court below.