Judge SPARKS
delivered the opinion of the Court.
Contrary to his pleas, Appellant was convicted by military judge alone of one specification of conspiracy to commit larceny, one specification of making a false official statement, and six specifications- of larceny in violation of Articles 81,107, and 121, Uniform Code of Military Justice, (UCMJ), 10 U.S.C. § 881, 907, 921 (2012). The adjudged and approved sentence included twenty months of confinement and a dishonorable discharge. Appellant appealed to the United States Navy-Marine Corps Court of Criminal Appeals and the lower court affirmed the findings and sentence. Appellant petitioned this Court for review on the following assigned issue:
The' systematic exclusion of individuals by rank from the member-selection process is prohibited. Here, the military judge dismissed the panel for violating Article 25, UCMJ, but the convening authority reconvened the exact same panel the same day. Is this systemic exclusion based on rank reversible error?
We conclude that there was no systemic exclusion of members based on rank and that the convening authority did not violate Article 25, UCMJ, 10 U.S.C. § 824 (2012). Accordingly, we affirm the decisions of the United States Navy-Marine Corps Court of Criminal Appeals and the military judge.
Background
The underlying facts related to the charges in this case are not relevant to the issue before the Court. Instead we focus on events surrounding the selection of the panel of members. Prior to trial, Appellant objected to the lack of junior members on the convening order (lb-13), which appointed a panel comprised of officers at paygrade 0-4 and above, enlisted members at paygrade E-8 and above, and no warrant officers. After having sent out a communication soliciting updated member questionnaires only for officers at paygrade 0-4 and above and enlisted personnel at paygrade E-8 and above, the staff judge advocate assembled a draft convening order, The staff judge advocate then forwarded the draft list of sixteen potential members to the convening authority (Colonel Schultz[1]) along with the potential members’ completed questionnaires. The convening authority selected the panel from that list of sixteen.[2]
On September 29th, 2014, the military judge sustained Appellant’s objection to the panel and found that the selection process had excluded potential members based on rank. The staff judge advocate then provided the convening authority (now General Coglia-nese) with an amended convening order (lc-13) consisting of the same list of names. The convening authority also received the full roster of over 8,000 potential members and was informed he could substitute any of those names who fit the Article 25, UCMJ, criteria if he so desired. The following day *143 (September 30th, 2014), the convening authority appointed the exact same panel. In a letter addressed to the military judge he stated that, “I know these individuals personally and selected them specifically because I am convinced they meet the qualifications for membership.” He also confirmed that he recognized he could have chosen from among the full roster of “roughly 8,000 Marines and sailors” and that he personally selected this panel based on Article 25, UCMJ, criteria.
Defense counsel objected to the new order, claiming that the defect in the previous order had not been cured. The military judge overruled the objection, finding that any appearance that the members had been excluded according to rank was resolved by creation of the second order in compliance with Article 25, UCMJ.
Following the military judge’s ruling, defense counsel stated that based on the military judge’s ruling, it was their position that, “[W]e are forced to abandon our request for trial by members ... and Lance Corporal Bartee is requesting trial by military judge alone.” Given counsel’s statement, the military judge informed the parties that it would be necessary to query Appellant to determine whether his request to waive his right to trial by members was knowing, intelligent, and voluntary. Twice during this colloquy with counsel, the military judge stated that his ruling on the Article 25, UCMJ, issue was preserved for appeal. During this discussion, defense counsel stated that the military judge’s ruling on the panel was one but not the only factor in the decision to forgo trial by members and declined to specify the other reasons, citing attorney-client privilege. Following the colloquy, the military judge approved Appellant’s request and the military judge alone trial moved forward.
Discussion
Appellant asks this Court to determine if a systematic exclusion of individuals by rank from the member selection process led to an improperly selected panel. Whether a court-martial panel was selected free from systematic exclusion is a question of law reviewed de novo. United States v. Kirkland, 53 M.J. 22, 24 (C.A.A.F. 2000). The burden is on the defense to establish the improper exclusion of qualified personnel from the selection process. Id. Once the defense establishes such exclusion, the government must show by competent evidence that the member selection process was free from impropriety. Id.
Article 25, UCMJ, details who may serve on a court-martial. The list includes commissioned officers, warrant officers, and—when specifically requested by the defendant—enlisted members may serve on a court-martial of another enlisted member. If it can be avoided, members should not be junior in rank to the defendant. In addition, “[w]hen convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament.” Article 25(d)(2), UCMJ.
In United States v. Ward, 74 M. J. 225 (C.A.A.F. 2015), this Court married two threads of analysis provided by earlier case law, United States v. Bartlett, 66 M.J. 426 (C.A.A.F. 2008), and Kirkland, 53 M.J. 22, and stated that an accused must be provided “both a fair panel ... and the appearance of a fair panel.” Ward, 74 M.J. at 228. Here, as in Ward, there were no allegations that that the panel members selected did not qualify on the basis of age, education, training, experience, length of service, and judicial temperament. Id. at 229. Instead, Appellant posits that it was the process utilized by the convening authority which was improper.
“Congress and the President crafted few prohibitions on court-martial service to ensure maximum discretion to the convening authority in the selection process, while maintaining the basic fairness of the military justice system.” Bartlett, 66 M.J. at 429. However, systemic exclusion of otherwise qualified potential members based on an impermissible variable such as rank is improper. United States v. Dowty, 60 M.J. 163, 171 (C.A.A.F. 2004). A staff judge advocate can assist the convening authority as long as this help does not improperly exclude any poten *144 tial members. United States v. Roland, 50 M.J. 66, 69 (C.A.A.F. 1999).
In Dowty, this Court identified three factors that are most helpful in evaluating any process for screening potential members. These include looking for:
(1) Improper motive to “pack” the member pool;
(2) Systemic exclusion of otherwise qualified members based on an impermissible variable like rank; and
(3) Good faith efforts to be inclusive so courts-martial are open to all segments of the military community.
60 M.J. at 171.
With respect to factors one and three, there is no credible evidence indicating bad faith or improper motive on the part of the staff judge advocate or convening authority in redrawing the second panel, despite the fact that it was comprised of the same members.[3] However, lack of bad faith or improper motive is not dispositive in and of itself. We now focus on factor two and whether the redrawn panel lc-13 was tainted by an impermissible exclusion of qualified members on the basis of rank.
The present case can be distinguished from the two cases central to Appellant’s argument. In Kirkland, 63 M.J. 22, the convening authority gathered members by sending out a communication requesting nominees and an accompanying chart that had columns for enlisted members only at ranks E-7 and above. Id at 23. The appellant brought a motion to dismiss the panel. Id. This Court found the exclusion of the lower ranks improper and the sentence was reversed (the appellant pled guilty and never went to trial). Id. at 26. The exclusion of members below a certain rank occurred in a similar manner as in the present case, with nominees recruited through a communication that only requested members above a certain rank. However, unlike in this case, the military judge never determined that first panel was improper so the government did not have an opportunity to go back and allow the convening authority to reconsider its composition.
In United States v. Greene, selection of members was restricted in accordance with a memo from the staff judge advocate recommending use of only those of a certain rank (lieutenant colonels and colonels) as members. 20 U.S.C.M.A. 232, 233, 43 C.M.R. 72, 73 (1970). In light of this memo, the original panel, selected by the special court-martial authority and consisting of a range of officers, was rejected by the chief of military justice in favor of a limited panel. Id at 235, 43 C.M.R. at 75. The military judge requested that the convening authority reconsider the panel and the appointment of officers of other grades, and the convening authority responded that he intended to keep the same panel, as he considered them the most qualified under Article 25, UCMJ. Id at 235-36, 43 C.M.R. at 75-76. The Greene court found the panel had been improperly constituted and remanded the ease. Id. at 238-39, 43 C.M.R. at 78-79, The most notable difference in Greene is that it lacked the step in which the convening authority stated directly to the court that he had reconsidered the panel with full awareness of the Article 25, UCMJ, factors and the full roster of Marines available as potential members.
The central question here is whether, given the circumstances surrounding the assembly of the second panel, the member selection process still maintained the appearance of fairness and integrity. We conclude that the additional steps taken by the convening authority were sufficient to cure any systemic exclusion of members by rank. In his letter to the trial court, the convening authority expressly stated that he considered the Article 25, UCMJ, criteria and personally selected the panel only on the basis of that criteria, and confirmed that he was cognizant *145 of the roster of “roughly 8000 Marines and sailors” from which he could have drawn members. We are satisfied that—despite the composition of the second panel being identical to that of the first—any improprieties were cured in the steps taken by the convening authority the second time around. Panel lc-13 was not tainted by systematic exclusion according to rank.
Decision
The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

. By order of General Coglianese, Colonel Schultz had been appointed acting commander for the period from September 4, 2014, to September 26, 2014.

. The original convening order was la-13. However, due to a delay in the proceedings, the convening authority (now General Coglianese) did make two substitutions for members who were not available to sit on the panel, neither of whom was from the staff judge advocate's original list of sixteen. This resulted in convening order lb-13.

. Appellant introduces an e-mail that allegedly circulated regarding a higher level decision to pack panels with senior members because sentences had been too light and there had been too many not guilty findings. Though this would clearly entail interference with the ban on systemic exclusion according to rank, Appellant provides no information linking the e-mail to any of the actors in the present case and the audience and reach of the email seem to be unknown as well. Therefore, we find no reason to take this email under consideration.